## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATHANIEL CLARKE,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-2802** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

**SCOTT, J.**                                                                                      **JULY 18, 2025**

Currently before the Court is the Amended Complaint filed by *pro se* Plaintiff Nathaniel

Clarke who alleges his rights were violated during a series of interactions with police in

Philadelphia, Pennsylvania.  For the following reasons, the Court will dismiss the Amended

Complaint.  Clarke will be given an opportunity to file a second amended complaint if he can

correct the deficiencies noted by the Court.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The document that was entered on the docket as Clarke's initial Complaint consisted of a

cover letter, two pages of checklists, a one-page Statement of Facts, and two pages listing twenty

Claims for Relief.  (*See* Compl. at 1-6.)[1]  The Statement of Facts described a series of

interactions between Clarke and unnamed police officers, some of which also involved Clarke's

partner, "Samer A."  (*See id.* at 4, ¶¶ 7-10.)  He also described an incident at an Airbnb involving

Clarke, Samer A., and a cleaning woman, as well as Samer A.'s subsequent disappearance.  (*Id.*

---

[1] For citation to all *pro se* pleadings, the Court adopts the sequential pagination supplied
by the CM/ECF docketing system.

at 4, ¶¶ 11-13.)  The claims listed in the Complaint included numerous alleged constitutional violations, as well as state law claims.  (*See id.* at 5-6.)

In a June 10, 2025 Memorandum and Order, the Court granted Clarke *in forma pauperis* status and screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  (ECF Nos. 5 and 6.) The Court dismissed the Complaint because it did not meet Federal Rule of Civil Procedure 8's "plain" statement requirement and a defendant could not reasonably be expected to respond to it due to the unclear manner in which it was presented.  (ECF No. 5 at 4-5.)  The Complaint did not include a caption naming any Defendant or a list of the individuals or entities Clarke sought to hold liable for his claims, and did not describe the actions taken by any particular defendant in regard to Clarke's claims.  (*Id.*)

The Court noted other deficiencies in the initial Complaint.  (*Id.* at 5-7.)  For example, the Court advised Clarke that in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  (*Id.* at 5 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).)  Further, while the Complaint included a lengthy list of Claims for Relief, Clarke did not sufficiently allege facts in support of those legal conclusions.  (*Id.*)  The Court explained that "[a]lthough the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  (*Id.* (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted)).) Clarke was given thirty days leave to file an amended complaint.  (ECF No. 6.)

On July 9, 2025, Clarke filed the Amended Complaint that is presently before the Court. (ECF No. 8.)  This pleading consists of several documents.  The first is a five-page document

titled "Amended Complaint" that is dated July 4, 2025.  (*See* ECF No. 8 at 1-5.)  Attached is a

"Judicial Letter of Clarification (Updated)" dated July 6, 20025 (ECF 8 at 5-6); a "Local Rule

7.1(a) Certification" (ECF No. 8-1); a Certificate of Service (ECF No. 8-2); and a four-page

letter within which is embedded another "Amended Complaint" that is dated July 10, 2025.[2]

(ECF No. 8-3 at 1-4.)

     Clarke represents that he is currently a citizen of New York and that he previously

resided at 2101 N. College Avenue in Philadelphia, Pennsylvania.  (*See* ECF No. 8 at 1.)  Named

as Defendants are: the City of Philadelphia, Sergeant Debrah Sander Wilson, John Does 1-5, a

Jane Doe who is identified as the Girard Court Property Manager, and Kimberly Clarke who is

identified as Clarke's estranged mother and former landlord.  (*Id.* at 1-2.)  Clarke alleges that

Kimberly Clarke repeatedly contacted the Philadelphia Police Department throughout May 2023

seeking Clarke's removal from 2101 N. College Avenue but was advised by police that eviction

is a civil matter requiring a court order and that police lacked authority to remove Clarke absent

that process.  (*Id.* at 2.)  He further alleges that Kimberly Clarke falsely reported to police on

June 1, 2023, that Clarke had brandished a firearm at her.  (*Id.*)  According to Clarke, five John

Doe officers acting under the direction of Sgt. Wilson responded "with an unmarked SWAT unit,

entered without a warrant, and 'cleared' the premises," although no weapon or contraband was

found.  (*Id.*)  Clarke claims that he was detained along with his partner, Samer A., that he was

arrested without probable cause or exigent circumstances, his personal belongings were

confiscated, and the apartment locks were changed.  (*Id.*)  He further contends that the Jane Doe

---

[2] The Amended Complaint was entered on the docket on July 11, 2025, but reflects a filing date of July 9, 2025.  (*See* ECF No. 8.)  Although the pleading was filed on July 9, the second version of the "Amended Complaint" contained in the pleading is dated July 10.  (*See* ECF No. 8-3 at 3.)

property manager and Kimberly Clarke accessed the unit after Clarke was forcibly removed and physically barred him from reentering the apartment. (*Id.*) As alleged, Kimberly Clarke coerced Shakiya Williams, who is Clarke's niece, into claiming lawful residency, which Kimberly Clarke used to obtain a Protection From Abuse ("PFA") order on June 2, 2023. (*Id.*) He contends: "Williams was the resident but moved out so [Clarke] moved into the apartment by request of Kimberly Clarke; affidavit was procured under duress." (*Id.*) Clarke claims that he filed PFA petitions on March 10, April 5, and May 15, 2023, but they were rejected for lack of evidence, which demonstrates that Kimberly Clarke's successful PFA was obtained through fraud and the acquiescence of law enforcement officers. (*Id.*) Clarke asserts that Kimberly Clarke's misuse of the legal process, "facilitated by PPD's failure to investigate," resulted in his unlawful arrest, displacement, emotional distress, and financial harm. (*Id.* at 3.) Based on these allegations, Clarke alleges that his Fourth Amendment rights were violated when police entered his apartment without a warrant and he was arrested without probable cause, that his Fourteenth Amendment due process rights were violated, that he was subjected to selective enforcement in violation of the equal protection clause, that certain Defendants conspired to violate his rights, and that Kimberly Clarke and Jane Doe misused the PFA process to evict him from his home. (*Id.* at 3-4.) Clarke seeks injunctive relief and damages. (*Id.* at 4.)

In the second version of the Amended Complaint that was included in Clarke's filing, Clarke includes a "Corrected Timeline" that sets forth alternative facts. (*See* ECF No. 8-3 at 2-4.) Clarke alleges that he was detained without a warrant or probable cause on June 1, 2023, after police responded to a false report by his mother alleging that he had pointed a firearm at her. (*Id.* at 2.) Clarke contends that a SWAT unit was dispatched to his residence despite the absence of any credible threat and that he "voluntarily exited his home to speak with police and

was assured the matter was civil." (*Id.*)  Defendant Wilson is alleged, nonetheless, to have ordered his detention and Clarke was detained in a squad car while "the landlord and [Clarke's] mother unlawfully entered and changed the locks, effectuating an illegal eviction without court order or due process." (*Id.*)  Clarke also claims that he and his partner, Samer A., were arrested on June 5, 2023, based on a fraudulent PFA that was obtained without proper process.  (*Id.*)  He contends that he and Samer A. were forcibly removed, handcuffed, and denied access to Clarke's home, without a warrant or eviction order.[3]  (*Id.*)  This portion of the pleading names as Defendants only the City of Philadelphia, Sergeant Wilson, and John and Jane Doe police officers.  (*Id.*)  After he filed the Amended Complaint on July 9, 2025, Clarke filed another letter (ECF No. 9) and a Motion for Emergency Housing Relief (ECF No. 10).

## II.    STANDARD OF REVIEW

Because Clarke has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will

---

[3] Clarke includes in the second version of the amended complaint a list of claims, without further supporting facts:  Count I – unlawful search and seizure; Count II – due process violations; Count III – malicious prosecution; Count IV – failure to intervene; Count V – abuse of process; Count VI – Monell claim against the City of Philadelphia; Count VII – civil conspiracy; Count VIII – failure to investigate and protect; Count IX – conversion and deprivation of property.  (ECF No. 8-3 at 3.)  He again seeks various injunctive relief as well as damages.  (*Id.* at 3-4.)

accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Clarke is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support."). In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a plaintiff's complaint to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction, and a demand for the relief sought. Fed. R. Civ. P. 8(a).

## III.    DISCUSSION

Clarke seeks to assert, *inter alia*, constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Local governments and municipalities are considered persons under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Additionally, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As a preliminary matter, having reviewed Clarke's submission in its entirety and construing the allegations liberally, the circumstances of the alleged claims remain largely unclear and the pleading again fails to satisfy the requirements of Federal Rule of Civil Procedure 8. The Court reiterates that Rule 8 requires a complaint to describe actions taken by a defendant in relation to the plaintiff's claims in a manner that is not ambiguous or confusing. *Garrett*, 938 F.3d at 93. In determining whether a pleading meets Rule 8's "plain" statement requirement, a court must "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Id.* (citation omitted). "[A] pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* The important consideration

for the court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

Even liberally construed, the Amended Complaint does not meet Rule 8's "plain" statement requirement. The pleading is disjointed and a defendant could not reasonably be expected to respond to it because it is internally inconsistent with respect to material allegations. With respect to the police officer Defendants, for example, Clarke alleges in the first version that he was forcibly removed from 2101 N. College Avenue by five officers on June 1, 2023, after Kimberly Clarke reported to police that he had brandished a firearm at her. (*See* ECF No. 8 at 2.) In contrast, in the second version of the amended complaint, Clarke alleges that he was detained without a warrant or probable cause on June 1, 2023, after police responded to a false report by his mother alleging that he had pointed a firearm at her. (ECF No. 8-3 at 2.) In that version of the event, Clarke claims he "voluntarily exited his home." (*Id.*) It is also unclear from the two versions of the amended complaint whether he was detained and/or arrested on June 1, 2023, or arrested only on June 5, 2023. (*Compare* ECF 8 at 2, ¶ 14 *with* ECF 8-3 at 2, ¶ 8.) Furthermore, the first version of the amended complaint names as Defendants the City of Philadelphia, Sergeant Wilson, John Does 1-5, a Jane Doe, and Kimberly Clarke, while the second version of the amended complaint names only the City of Philadelphia, Sergeant Wilson, and John and Jane Does. (*Compare* ECF No. 8 at 1-2 *with* ECF 8-3 at 2.) Thus, the Amended Complaint again fails to provide fair notice of the grounds upon which the claims against the various Defendants rest, as required by Rule 8. Accordingly, the Amended Complaint will be dismissed. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (explaining that Rule 8 permits dismissal where the complaint "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised"); *Afzal v. N.J.*

*Bd. of Med. Examiners*, No. 22-1609, 2022 WL 4533826, at *3 (3d Cir. Sept. 28, 2022) (*per curiam*) (affirming dismissal of complaint pursuant to Rule 8 because plaintiff failed to plead adequate factual content to support a reasonable inference that defendants were liable and failed to present cognizable legal claims to which defendants could respond on the merits).

Clarke is cautioned that he cannot submit piecemeal filings, such as the Amended Complaint. "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett*, 938 F.3d at 82. "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* Furthermore, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (*per curiam*); *see also Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims." (internal quotations omitted)). Although Clarke is representing himself, the Court cannot disregard the Federal Rules of Civil Procedure to piece together allegations from the various documents he submitted as his Amended Complaint. Because of the way Clarke presented his claims, the Court lacks a clear operative pleading and an understanding of his allegations and claims. Accordingly, the Court will give Clarke an opportunity to file a complete and comprehensive Second Amended Complaint in which he must present his allegations and claims in one pleading. *See Angelo v. NVR, Inc.*, No. 18-523, 2020 WL 1443214, at *4 (D. Del. Mar. 24, 2020) ("Plaintiff is reminded that should he opt to file a second amended complaint, all allegations shall be contained in one pleading . . . .").

To the extent the Court can decipher Clarke's basis to bring claims based on an alleged illegal search and/or seizure, or arrest, such claims would be analyzed as a violation of his Fourth Amendment rights.  The elements of a § 1983 claim for unreasonable search and seizure are:  (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989).  "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).  Nevertheless, "what is reasonable depends on the context within which a search takes place." *Id.*  Although searches generally require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits an arresting officer to perform a search incident to an arrest.  *See generally Birchfield v. North Dakota*, 579 U.S. 438, 455-61 (2016) (discussing the search-incident-to-arrest doctrine).

False arrest and false imprisonment are "nearly identical claims" that are generally analyzed together.  *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005).  To state a § 1983 claim for false arrest or false imprisonment, the plaintiff must allege: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)).  Therefore, a plaintiff must allege facts sufficient to support a reasonable inference that the defendants acted without probable cause.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

10

offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). In other words, for false arrest claims involving multiple charges, establishing probable cause on one charge insulates the defendant from liability. *See Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024); *Bracken v. Twp. of Manor*, No. 23-1763, 2024 WL 4210535, at *3 n.5 (3d Cir. Sept. 17, 2024) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008)). The inconsistencies in the two versions of the Amended Complaint render any Fourth Amendment claims implausible.

Further, as noted above and in the Court's prior Memorandum, in a § 1983 action the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845

F.2d at 1207)).  Thus, a proper complaint must explain what each defendant did or did not do

with respect to the alleged constitutional harms.[4]

---

[4] The Court further notes that "[t]he color of state law element is a threshold issue; there
is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of
Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  Whether a defendant is acting under color of state
law -- *i.e.*, whether the defendant is a state actor -- depends on whether there is "such a close
nexus between the State and the challenged action that seemingly private behavior may be fairly
treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal
quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests
generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether
the private entity has exercised powers that are traditionally the exclusive prerogative of the
state; (2) whether the private party has acted with the help of or in concert with state officials;
and (3) whether the state has so far insinuated itself into a position of interdependence with the
acting party that it must be recognized as a joint participant in the challenged activity." *Kach v.
Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  Clarke's
allegation that Kimberly Clarke misused the PFA process or called police to report that Clarke
had brandished a weapon does not make her a state actor. *See, e.g., Yoast v. Pottstown Borough*,
437 F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police -- even
deliberately -- does not transform a private party into a state actor."), *aff'd*, No. 22-1960, 2023
WL 4418213 (3d Cir. July 10, 2023).  Similarly, Clarke's allegations that Kimberly Clarke and
the Jane Doe property manager sought to evict Clarke from the College Avenue property, or
changed the locks there, does not make them state actors. *See, e.g., Gueson v. Feldman*, No. 00-
1117, 2001 WL 34355662, at *10 (E.D. Pa. Nov. 30, 2001) ("Filing a lawsuit in state court, is
not for 1983 purposes 'state action;' nor does it turn a private citizen into a state actor."); *see
also Daviston v. Delaware Cnty. Tax Claim Bureau*, No. 19-5848, 2019 WL 6894398, at *2
(E.D. Pa. Dec. 18, 2019) (filing of landlord-tenant action in state court did not make a private
entity a "state actor" for purposes of § 1983).
    The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1)
two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of
the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act
injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a
citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under
the color of state law.'" *Jutrowski*, 904 F.3d at 294 (quoting *Barnes Foundation v. Township of
Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).  "[T]o properly plead an unconstitutional
conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."
*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A]
bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556
(2007).  Clarke presents no plausible allegations of a conspiratorial agreement amongst any of
the Defendants.

Additionally, a municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to plead a § 1983 claim against a municipality such as the City of Philadelphia, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). Allegations that simply paraphrase the standard for municipal liability, however, are too generalized to support a claim against the City. *Id.* at 659; *see also Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases). Further, "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Clark's allegation that the City of Philadelphia is "responsible for the policies and practices of the Philadelphia Police Department" (ECF No. 8 at 1) is insufficient to allege a plausible *Monell* claim.

The Amended Complaint once again includes a lengthy list of Claims for Relief, (*see* ECF 8-3 at 3), without sufficient factual support. Clarke again is advised that if he does not sufficiently allege facts in support of his claims, his case will not pass statutory screening. "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*,

809 F.3d at 786 (internal quotation marks and citations omitted).  "A complaint that pleads facts merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (cleaned up); *see also Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (the Court is not required "to accept as true unsupported conclusions and unwarranted inferences.").

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Clarke's claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Clarke will be given leave to file a second amended complaint that conforms to the requirements of the Federal Rules of Civil Procedure.  If Clarke files a second amended complaint, he should utilize the court's General Complaint form which will be provided to him.[5]  Clarke may attach pages to the form if he needs additional space.  The form will provide a framework for Clarke to describe his claims in a coherent manner.[6]

An appropriate order follows, which contains additional instructions as to amendment.

**BY THE COURT:**

*/S/Kai N. Scott*
_____
**KAI N. SCOTT, J.**

---

[5] The form complaint is also available on the court's website at https://www.paed.uscourts.gov/sites/paed/files/documents/forms/frmcgenf.pdf

[6] Additionally, Clarke's Motion for Emergency Housing Relief (ECF No. 10) will be denied.  The Court cannot provide Clarke with the relief he seeks.