## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATHANIEL CLARKE,     :
   Plaintiff       :
              :
  v.          :   **CIVIL ACTION NO. 25-CV-2802**
              :
CITY OF PHILADELPHIA, *et al.*,  :
   Defendants     :

### MEMORANDUM

SCOTT, J.                   **AUGUST  25, 2025**

Currently before the Court is the Second Amended Complaint (ECF No. 14) ("SAC")
filed by *pro se* Plaintiff Nathaniel Clarke who alleges his rights were violated by police in
Philadelphia, Pennsylvania. For the following reasons, the Court will dismiss the SAC with
prejudice.

### I.  FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The document that was entered on the docket as Clarke's initial Complaint consisted of a
cover letter, two pages of checklists, a one-page Statement of Facts, and two pages listing twenty
Claims for Relief. (*See* Compl. at 1-6.)[1] The Statement of Facts described a series of
interactions between Clarke and unnamed police officers, some of which also involved Clarke's
partner, "Samer A." (*See id.* at 4, ¶¶ 7-10.) He also described an incident at an Airbnb involving
Clarke, Samer A., and a cleaning woman, as well as Samer A.'s subsequent disappearance. (*Id.*
at 4, ¶¶ 11-13.) The claims listed in the Complaint included numerous alleged constitutional
violations, as well as state law claims. (*See id.* at 5-6.)

---

[1] For citation to all *pro se* pleadings, the Court adopts the sequential pagination supplied
by the CM/ECF docketing system.

In a June 10, 2025 Memorandum and Order, the Court granted Clarke *in forma pauperis* status and screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (ECF Nos. 5 and 6.) The Court dismissed the Complaint because it did not meet Federal Rule of Civil Procedure 8's "plain" statement requirement and a defendant could not reasonably be expected to respond to it due to the unclear manner in which it was presented. (ECF No. 5 at 4-5.) The Complaint did not include a caption naming any Defendant or a list of the individuals or entities Clarke sought to hold liable for his claims, and did not describe the actions taken by any particular defendant in regard to Clarke's claims. (*Id.*)

The Court noted other deficiencies in the initial Complaint. (*Id.* at 5-7.) For example, the Court advised Clarke that in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. (*Id.* at 5 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).) Further, while the Complaint included a lengthy list of Claims for Relief, Clarke did not sufficiently allege facts in support of those legal conclusions. (*Id.*) The Court explained that "[a]lthough the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." (*Id.* (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted)).) Clarke was allowed thirty days to file an amended complaint. (ECF No. 6.)

On July 9, 2025, Clarke filed an Amended Complaint that once again consisted of several, separate documents.[2] (*See* ECF No. 8.) Clarke represented that he then resided in New

---

[2] The first was a five-page document titled "Amended Complaint" that is dated July 4, 2025. (*See* ECF No. 8 at 1-5.) Attached was a "Judicial Letter of Clarification (Updated)" dated July 6, 20025 (ECF 8 at 5-6); a "Local Rule 7.1(a) Certification" (ECF No. 8-1); a Certificate of

2

York and that he previously resided at 2101 N. College Avenue in Philadelphia, Pennsylvania. (*See id.* at 1.) Named as Defendants were: the City of Philadelphia, Sergeant Debrah Sander Wilson, John Does 1-5, a Jane Doe who was identified as the Girard Court Property Manager, and Kimberly Clarke who was identified as Clarke's estranged mother and former landlord. (*Id.* at 1-2.) Clarke alleged that Kimberly Clarke repeatedly contacted the Philadelphia Police Department throughout May 2023 seeking Clarke's removal from 2101 N. College Avenue but was advised by police that eviction is a civil matter requiring a court order and that police lacked authority to remove Clarke absent that process. (*Id.* at 2.) He further alleged that Kimberly Clarke falsely reported to police on June 1, 2023, that Clarke had brandished a firearm at her. (*Id.*) According to Clarke, five John Doe officers acting under the direction of Sgt. Wilson responded "with an unmarked SWAT unit, entered without a warrant, and 'cleared' the premises," although no weapon or contraband was found. (*Id.*) Clarke claimed that he was detained along with his partner, Samer A., that he was arrested without probable cause or exigent circumstances, his personal belongings were confiscated, and the apartment locks were changed. (*Id.*) He further contended that the Jane Doe property manager and Kimberly Clarke accessed the unit after Clarke was forcibly removed and physically barred him from reentering the apartment. (*Id.*) As alleged, Kimberly Clarke coerced Shakiya Williams, who is Clarke's niece, into claiming lawful residency, which Kimberly Clarke used to obtain a Protection From Abuse ("PFA") order on June 2, 2023. (*Id.*) He contended that "Williams was the resident but moved

---

Service (ECF No. 8-2); and a four-page letter within which is embedded another "Amended Complaint" that is dated July 10, 2025. (ECF No. 8-3 at 1-4.)

The Amended Complaint was entered on the docket on July 11, 2025, but reflected a filing date of July 9, 2025. (*See* ECF No. 8.) Although the pleading was filed on July 9, the second version of the "Amended Complaint" contained in the pleading was dated July 10. (*See* ECF No. 8-3 at 3.)

3

out so [Clarke] moved into the apartment by request of Kimberly Clarke; affidavit was procured

under duress." (*Id.*) Clarke claimed that he filed PFA petitions on March 10, April 5, and May

15, 2023, but they were rejected for lack of evidence, which demonstrated that Kimberly

Clarke's successful PFA was obtained through fraud and the acquiescence of law enforcement

officers. (*Id.*) Clarke asserted that Kimberly Clarke's misuse of the legal process, "facilitated by

PPD's failure to investigate," resulted in his unlawful arrest, displacement, emotional distress,

and financial harm. (*Id.* at 3.) Based on these allegations, Clarke alleged that his Fourth

Amendment rights were violated when police entered his apartment without a warrant and he

was arrested without probable cause, that his Fourteenth Amendment due process rights were

violated, that he was subjected to selective enforcement in violation of the equal protection

clause, that certain Defendants conspired to violate his rights, and that Kimberly Clarke and Jane

Doe misused the PFA process to evict him from his home. (*Id.* at 3-4.) Clarke requested

injunctive relief and damages. (*Id.* at 4.)

      In the second version of the Amended Complaint that was included in Clarke's filing,

Clarke included a "Corrected Timeline" that set forth alternative facts. (*See* ECF No. 8-3 at 2-4.)

Clarke alleged that he was detained without a warrant or probable cause on June 1, 2023, after

police responded to a false report by his mother alleging that he had pointed a firearm at her. (*Id.*

at 2.) Clarke contended that a SWAT unit was dispatched to his residence despite the absence of

any credible threat and that he "voluntarily exited his home to speak with police and was assured

the matter was civil." (*Id.*) Defendant Wilson was alleged, nonetheless, to have ordered his

detention and Clarke was detained in a squad car while "the landlord and [Clarke's] mother

unlawfully entered and changed the locks, effectuating an illegal eviction without court order or

due process." (*Id.*) Clarke also claimed that he and his partner, Samer A., were arrested on June

4

5, 2023, based on a fraudulent PFA that was obtained without proper process. (*Id.*) He
contended that he and Samer A. were forcibly removed, handcuffed, and denied access to
Clarke's home, without a warrant or eviction order.[3] (*Id.*) This portion of the pleading named as
Defendants only the City of Philadelphia, Sergeant Wilson, and John and Jane Doe police
officers. (*Id.*) After he filed the Amended Complaint on July 9, 2025, Clarke filed another letter
(ECF No. 9) and a Motion for Emergency Housing Relief (ECF No. 10).

In a July 18, 2025 Memorandum and Order, the Court screened the Amended Complaint
and again dismissed the pleading pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim.
(ECF Nos. 11, 12.) The Court determined that even liberally construed, the circumstances of the
alleged claims remained largely unclear and the pleading again failed to satisfy the requirements
of Rule 8. (ECF No. 11 at 7-9.) The Amended Complaint did not meet Rule 8's "plain"
statement requirement in that it was disjointed and a defendant could not reasonably be expected
to respond to it because it was internally inconsistent with respect to material allegations. (*See
id.* at 8.) The Court cautioned Clarke that the Federal Rules of Civil Procedure do not permit
piecemeal filings. (*Id.* at 9.) Due to the manner in which Clarke presented his claims, the Court
lacked a clear operative pleading and an understanding of his allegations and claims.
Accordingly, Clarke was given an opportunity to file a complete and comprehensive Second
Amended Complaint. (*Id.*)

---

[3] Clarke included in the second version of the amended complaint a list of claims, without
further supporting facts: Count I – unlawful search and seizure; Count II – due process
violations; Count III – malicious prosecution; Count IV – failure to intervene; Count V – abuse
of process; Count VI – *Monell* claim against the City of Philadelphia; Count VII – civil
conspiracy; Count VIII – failure to investigate and protect; Count IX – conversion and
deprivation of property. (ECF No. 8-3 at 3.) He again sought various injunctive relief as well as
damages. (*Id.* at 3-4.)

Nonetheless, the Court provided Clarke with, *inter alia*, the pleading standards for Fourth

Amendment claims based on an unreasonable search and seizure, as well as false arrest and false

imprisonment. (*See id.* at 10-11.) Clarke also was advised that a properly pled complaint

explains what each defendant did or did not do with respect to the alleged constitutional harms

and must contain sufficient factual support for the alleged claims.[4] (*Id.* at 11-14.) Clarke was

allowed thirty-days leave to file a Second Amended Complaint. (*Id.* at 14; ECF No. 12.) On

August 18, 2025, Clarke filed the SAC that is presently before the Court. (ECF No. 14.)

In the SAC, Clarke alleges violations of his Fourth and Fourteenth Amendment rights and

names as Defendants: the City of Philadelphia, the Philadelphia Police Department, Sergeant

Sandra Wilson, Sergeant Jane Roe, Officer Rodriguez, John Doe 1-8 (SWAT officers), Kimberly

Clarke, and Jane Doe (property manager). (*See* SAC at 1.) Clarke claims that SWAT officers

entered his apartment at 2101 N. College Avenue on June 1, 2023, without a warrant, forcibly

removed Clarke and his partner, seized personal property, and changed the apartment locks. (*Id.*

at 2.) He contends that no probable cause or exigent circumstance existed. (*Id.*) Clarke also

claims that Sergeant Jane Roe and Officer Rodriguez arrested him on June 5, 2023, based on a

fraudulent PFA order that was obtained through false statements. (*Id.*) Although somewhat

incoherent, the Court understands Clarke to allege that he overheard Sergeant Sandra Wilson

discussing the PFA order with Kimberly Clarke and the property manager. (*See id.* at ¶ 3.)

"Immediately thereafter, Sergeant Wilson and the property manager entered the building and

changed the locks" on Clarke's apartment. (*Id.* at 2.) Clarke asserts that the City of

---

[4] The Court also explained that there is no liability under § 1983 for those not acting under color of law, the elements of a proper § 1983 claim of conspiracy to violate federal civil rights, and the pleading standard for municipal liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). (*See* ECF No. 11 at 12-14.)

Philadelphia, through its Police Department, authorized and supervised the unlawful entry,

seizure, and a fraudulent arrest. (*Id.*) He avers that he suffered emotional injury and the loss of

his housing and possessions as a result of Defendants' actions. (*Id.*) Clarke seeks declaratory

and injunctive relief, as well as damages. (*Id.* at 3.)

## II.    STANDARD OF REVIEW

Because Clarke has been granted *in forma pauperis* status, 28 U.S.C. § 1915(e)(2)(B)(ii)

requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to

state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to

dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d

236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275,

286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged

in a *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only

whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United

States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v.

Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556

U.S. at 678.

Because Clarke is proceeding *pro se*, the Court construes his allegations liberally. *Vogt

v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the

complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts

in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented

litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.  DISCUSSION

Clarke asserts that his Fourth and Fourteenth Amendment rights were violated during interactions with Philadelphia polices officers in June 2023.[5]  (SAC at 1-2.)  The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To

---

[5] He also includes a lengthy list of claims for relief, albeit without factual support.  (*See* SAC at 3-4.)  Clarke's passing reference to legal precepts such as "abuse of process," "failure to investigate and protect," or "conversion and deprivation of property" does not bring such issues before the Court.  *Brown v. Pennsylvania, Wayne Cnty.*, No. 22-1506, 2023 WL 3376547, at *2 (3d Cir. May 11, 2023), *cert. dismissed sub nom. Brown v. Pennsylvania*, 144 S. Ct. 272 (2023), *reconsideration denied*, 144 S. Ct. 417 (2023); *see also Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

Further, while Clarke contends that his Fourteenth Amendment due process rights were violated, his allegations, to the extent discernable, pertain to the protections of the Fourth Amendment and will be evaluated thereunder.  *See generally Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotations omitted)); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" pursuant to which claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which that claim falls, rather than under the Due Process Clause as a catch all); *see, e.g., Flynn v. Lawless*, No. 24-2706, 2025 WL 2404389, at *4 (E.D. Pa. Aug. 19, 2025) (analyzing unlawful arrest claims under the Fourth Amendment rather than the Fourteenth Amendment (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).)

state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Local governments and municipalities are considered persons under § 1983. *Monell*, 436 U.S. at

690.

As stated in the Court's two prior Memoranda, in a § 1983 action the personal

involvement of each defendant in the alleged constitutional violation is a required element, and,

therefore, a plaintiff must allege how each defendant was involved in the events and occurrences

giving rise to the claims. *See Rode*, 845 F.2d at 1207; *see also Jutrowski v. Twp. of Riverdale*,

904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is

only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*,

957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of

personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at

1207)). Thus, a proper complaint must explain what each defendant did or did not do with

respect to the alleged constitutional harms.

Clarke's allegations of illegal search and/or seizure, and arrest, are analyzed as violations

of his Fourth Amendment rights. The elements of a § 1983 claim for unreasonable search and

seizure are: (1) the actions of the police officers constituted a search or seizure within the

meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the

surrounding circumstances. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989). "[T]he

underlying command of the Fourth Amendment is always that searches and seizures be

reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985). Nevertheless, "what is reasonable

depends on the context within which a search takes place." *Id.* Although searches generally

9

require probable cause or, at least, reasonable suspicion, there are exceptions including one that permits an arresting officer to perform a search incident to an arrest. *See generally Birchfield v. North Dakota*, 579 U.S. 438, 455-61 (2016) (discussing the search-incident-to-arrest doctrine).

To state a § 1983 claim for false arrest or false imprisonment, the plaintiff must allege: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."); *Noviho v. Lancaster Cnty.*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). Therefore, a plaintiff must allege facts sufficient to support a reasonable inference that the defendants acted without probable cause.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell*

10

*Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). In other words, for false arrest claims involving

multiple charges, establishing probable cause on one charge insulates the defendant from

liability. *See Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024);

*Bracken v. Twp. of Manor*, No. 23-1763, 2024 WL 4210535, at *3 n.5 (3d Cir. Sept. 17, 2024)

(citing *Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008)).[6]

     With regard to the claims alleging violations of his Fourth Amendment rights, Clarke

must plausibly plead that Defendants acted without probable cause. *See Urda v. Sokso*, No. 24-

1804, 2025 WL 2046175, at *1 (3d Cir. July 22, 2025) (Claims for "unlawful seizure, false

arrest, and malicious prosecution[] share a common element that . . . [a plaintiff] must plead and

prove: that . . . [the defendant] charged him without probable cause to believe that he had

committed a crime."). Clarke does not meet this standard because he offers no factual support

for his assertion that police lacked probable cause on June 1 when he was removed from the

apartment, and/or on June 5 when he was arrested based on a PFA order. (*See id.* at 2, 3-4.) As

---

[6] To the extent he now seeks to present a malicious prosecution claim (*see* SAC at 4), Clarke must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *See Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)). A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 602 U.S. at 562 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*. (emphasis added)). A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

pled, Clarke's Fourth Amendment claims are wholly conclusory and do not pass statutory

screening. *See, e.g., Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12,

2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth

Amendment, [the plaintiff] must plead the circumstances under which the search arose." (citation

omitted)), *aff'd sub nom. Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461

(3d Cir. Nov. 8, 2023); *Cromwell v. Fichter*, No. 22-3169, 2023 WL 3734969, at *2 (3d Cir.

May 31, 2023) (*per curiam*) (affirming dismissal of false arrest and false imprisonment claims

where plaintiff alleged that his arrest was based on a false report of criminal activity made by a

witness but plaintiff presented no factual allegations to support his conclusory statement); *id.* at

*2 n.2 ("Because Cromwell made no factual allegations to indicate that his arrest was lacking in

probable cause, he also cannot state an unreasonable search and seizure claim."); *Godfrey v.

Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to extent

plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to

facts suggesting [defendant] lacked probable cause to believe he had committed the offense for

which he was arrested"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa.

Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims

when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not

have probable cause" when plaintiffs simply alleged that all allegations against them in the

underlying criminal proceedings were false). As the Court has repeatedly advised Clarke (*see*

ECF No. 5 at 5 and ECF No. 11 at 13-14), "[a]lthough the plausibility standard does not impose

a probability requirement, it does require a pleading to show more than a sheer possibility that a

defendant has acted unlawfully." *Connelly*, 809 F.3d at 786 (internal quotation marks and

citations omitted). "A complaint that pleads facts merely consistent with a defendant's liability

12

stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see also Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (the Court is not required "to accept as true unsupported conclusions and unwarranted inferences."). Thus, Clarke has not alleged any plausible Fourth Amendment claim.

Further, the Court reiterates that "[t]he color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Whether a defendant is acting under color of state law -- *i.e.,* whether the defendant is a state actor -- depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Clarke's allegation that Kimberly Clarke falsely obtained a PFA does not make her a state actor. *See, e.g., Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police -- even deliberately -- does not transform a private party into a state actor."), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023). Similarly, Clarke's allegations that Kimberly Clarke and the Jane Doe property manager sought to evict Clarke from the College Avenue property, or changed the locks there, does not make them state actors. *See,*

13

*e.g., Gueson v. Feldman*, No. 00-1117, 2001 WL 34355662, at *10 (E.D. Pa. Nov. 30, 2001)

("Filing a lawsuit in state court, is not for 1983 purposes 'state action;' nor does it turn a private

citizen into a state actor."); *see also Daviston v. Delaware Cnty. Tax Claim Bureau*, No. 19-

5848, 2019 WL 6894398, at *2 (E.D. Pa. Dec. 18, 2019) (filing of landlord-tenant action in state

court did not make a private entity a "state actor" for purposes of § 1983).

      Additionally, Clarke has not plausibly pled that Defendants conspired to violate his civil

rights. The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1)

two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of

the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act

injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a

citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under

the color of state law.'" *Jutrowski*, 904 F.3d at 294 (quoting *Barnes Foundation v. Township of

Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). "[T]o properly plead an unconstitutional

conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A]

bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556

(2007). Clarke's allegation that Sergeant Wilson discussed the PFA order with Kimberly Clarke

and the property manager does not support a plausible allegation of a conspiratorial agreement

amongst these, or any other, Defendants.

      Furthermore, Clarke's attempt at alleging municipal liability once again fails. A

municipality such as the City of Philadelphia is not vicariously liable under § 1983 for the

actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (Local governments

can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal

acts.") (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

Rather, to plead a § 1983 claim against a municipality such as the City of Philadelphia, a plaintiff

must allege that the municipality's policy or custom caused the violation of his constitutional

rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . .

specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636,

658 (3d Cir. 2009). Allegations that simply paraphrase the standard for municipal liability,

however, are too generalized to support a claim against the City. *Id.* at 659; *see also Szerensci v.*

*Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs'

conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a

claim for § 1983 liability under *Monell*.") (citing cases). Moreover, "[i]t is well-settled that, if

there is no violation in the first place, there can be no derivative municipal claim." *See*

*Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013). Clarke's

allegation that the City of Philadelphia, through its Police Department, "authorized and

supervised the unlawful entry, seizure, and fraudulent arrest" is "responsible for the policies and

practices of the Philadelphia Police Department" (*see* SAC at 2), is insufficient to allege a

plausible *Monell* claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the SAC with prejudice pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. As Clarke already has been given two

opportunities to cure the defects in his claims and has been unable to do so, the Court concludes

that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp.*

*Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when

litigant "already had two chances to tell his story"); *Posey v. Klinefelter*, No. 25-1428, 2025 WL

15

1937084, at *2 (3d Cir. July 15, 2025) (affirming dismissal where the "District Court's orders

and the Magistrate Judge's reports and recommendations all informed Posey as to the ways in

which the complaints were deficient and provided multiple opportunities to amend, and yet

Posey repeatedly failed to do so").

A final dismissal order follows, which shall be docketed separately in accordance with

Federal Rule of Civil Procedure 58(a).[7]

**BY THE COURT:**

**KAI N. SCOTT, J.**

---

[7] Because Clarke's claims are dismissed with prejudice, the Court need not address
Clarke's Motion to Supplement Record with Recent Harm and Obstruction (ECF No. 15). It is
worth noting, however, that Clarke represents that he is a resident of New York, New York, and
the events described in the motion occurred while he resided in a congregate shelter in New
York. (*See id.*) Accordingly, while the Court expresses no opinion on the merits of any such
claims, the Eastern District of Pennsylvania would not be the appropriate venue to litigate that
dispute.

16